EXHIBIT D

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

FEB 19 2021

BY _____
SYLVIA GUAJARDO, DEPUTY

Michael R. Williams, State Bar No. 192222
mwilliams@bklwlaw.com
Nancy J. Sandoval, State Bar No. 302531
nsandoval@bklwlaw.com
BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

Attorneys for Plaintiffs
Dora Higgins and Vinson Higgins as court-appointed
Conservators for Latesha Denise Smith

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

| | |
|---|---|
| DORA HIGGINS, an individual, and VINSON HIGGINS, an individual, as court-appointed Conservators for LATESHA DENISE SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, and DOES 1 through 20, inclusive, individually and in their official capacities,<br><br>Defendants. | Case No. **CIV SB 2106387**<br><br>**COMPLAINT** |

2021 APR -8  AM 9:28
COUNTY OF SAN BERNARDINO
CALIFORNIA
CLERK OF THE
BOARD OF SUPERVISORS

---

COMPLAINT

Vinson and Dora Higgins ("Vinson and Dora"), as court-appointed conservators for Latesha Denise Smith ("Latesha"), complain and allege as follows:

## INTRODUCTION

1. On January 5, 2019, Latesha was incarcerated at the West Valley Detention Center pending trial on criminal charges. Three and a half months later, she was on the verge of death after attempting to take her own life in her cell. Today, she remains in an unconscious and unresponsive state, under 24-hour medical care. She almost certainly will remain that way for the rest of her life.

2. Latesha's suicide attempt and resulting injuries are the direct result of the defendants' deliberate indifference to her underlying mental illness and rapidly deteriorating mental state while in their custody. The defendants knew not only that Latesha had a long history of mental illness, but also that her mental health had reached a breaking point after months of incarceration. She repeatedly refused her medication. She suffered from delusions. She acted erratically and irrationally. She desperately wanted out of jail but refused to attend her court appearances. She exhibited virtually every trait of someone whose mental health was in tatters. The defendants knew all of this.

3. And they also knew Latesha was suicidal.

4. Nevertheless, on April 10, 2019, the defendants left Latesha alone and unmonitored in her cell. While no one was watching, Latesha built a rope out of her clothing and attempted to hang herself – a suicide attempt that was as predictable as it was tragic.

5. Latesha's parents, Vinson and Dora, bring this action to hold the defendants responsible for their deliberate indifference to their daughters' well-being.

## THE PARTIES

6. Vinson and Dora (collectively "Plaintiffs") are, and at all times mentioned in this Complaint were, individuals residing in South Carolina. They are bringing this Complaint on behalf of their daughter, Latesha Smith, who has been incapacitated since the incident giving rise to this Complaint.

7. Latesha Smith is currently residing in a convalescent care facility located in Los Angeles County, California.

8. Vinson and Dora are informed and believe that defendants the County of San Bernardino (the "County") and the San Bernardino Sheriff's Department (the "Sheriff's Department") are, and all

times mentioned in this Complaint were, governmental entities located in San Bernardino County, California.

9. Vinson and Dora are suing defendants named in this Complaint as Does 1 through 20 under fictitious names for the reason that Vinson and Dora do not presently know their true names or identities. When Vinson and Dora do ascertain the true names and identities of Does 1 through 20, it will amend this Complaint, including seeking leave of Court as necessary. Vinson and Dora are informed and believe that Does 1 through 20, along with the named defendants, are responsible for the acts about which Vinson and Dora complain in this Complaint.

10. Vinson and Dora are informed and believe that, at all times mentioned in this Complaint, each of the County and Does 1 through 20 (collectively the "Defendants") were the agents, servants, joint venturers, co-conspirators, and employees of one another, and in doing the things alleged in this Complaint, were acting within the course and scope of that relationship and with the full permission and consent of one another. Vinson and Dora are informed and believe that each, all, or some of the defendants ratified, approved, and adopted some or all of the acts of each of the other defendants. Vinson and Dora are informed and believe that each, all, or some of the defendants materially aided in some or all of the other defendants' violations.

## **JURISDICTION**

11. Plaintiffs Vinson and Dora have complied with the claim presentment requirements of the California Government Tort Claims Act. The County improperly rejected Vinson and Dora's application for leave to present late claims within one year of the incident. Vinson and Dora filed a timely petition with this Court for leave to file this Complaint.

12. On January 20, 2021, the Court granted the petition.

## **GENERAL ALLEGATIONS**

13. On or around January 5, 2020, Latesha was arrested in Needles, California and then incarcerated at the West Valley Detention Center (the "Detention Center") while awaiting trial. The Detention Center is located within the County of San Bernardino and operated by the San Bernardino Sheriff's Department.

14. From the outset of her incarceration, the Defendants were aware that Latesha suffered from severe mental illness.

15. Upon her daughter's arrest, Dora Higgins called the arresting officer and notified the officer of Latesha's history of mental health issues.

16. Moreover, documents show that upon entry into the Detention Center, Latesha's mental health was assessed by the Detention Center's medical staff. They found Latesha had impaired judgment, paranoid delusions, impaired insight, and poor self-control. She was anxious, suspicious, impulsive, and agitated. Her behavior was hostile, uncooperative, and tense. She expressed a wish to harm others.

17. As a result of this evaluation, Latesha was admitted into the Detention Center's Specialty Housing Unit - Immediate Mental Health Housing without a roommate due to a history of extreme combativeness and with instructions to monitor her in a safe and secure environment. Plaintiffs are informed and believe that according to the Detention Center's policies, inmates in the Immediate Mental Health Housing are to be more closely monitored with more frequent wellness checks. Plaintiffs are further informed and believe, however, that despite written policy there is or was at the relevant time period an unwritten policy and culture of ignoring inmate's medical and physical needs, especially those who suffered from mental health disorders or were deemed difficult. Indeed, several class action lawsuits have been filed against the County based on allegations regarding the treatment of its inmates, especially those suffering from mental health disorders.

18. Recently provided medical records show that despite Latesha's housing assignment and the additional duty to monitor her more closely, Latesha's mental health and living conditions consistently deteriorated during the three months she was incarcerated.

19. For instance, during a medical appointment in January, Latesha met her therapist wearing only a blanket. During the same month, Latesha was deemed insufficiently stable to transport to court and missed a court date.

20. By February, Latesha's appearance became disheveled, her attention span was impaired, and she remained uncooperative and unpredictable. Latesha would laugh at inappropriate times and talk to herself. Worse, she lacked insight into her own condition, was in a state of confusion, and repeatedly

refused to take medications. She was paranoid and weary of the Detention Center staff. Although she had occasional lucid days, Latesha continued her downward spiral.

21.     By March, Latesha was manic, disoriented, and extremely paranoid. Driven by her delusions, her behaviors became even more erratic. She believed the guards were trying to feed her human meat, and she did not trust them to bring her clean clothes. She would routinely undress, refuse to wear pants, and engage in socially inappropriate behaviors. Latesha would alternate between agitation and shutting down completely and refusing to communicate or leave her cell. She was disorganized and continued to refuse treatment or medication. Her living conditions became unsafe and unhygienic. After observing her behavior, one Detention Center mental health provider expressed concern that Latesha might be suicidal and suggested she be monitored accordingly. Plaintiffs are informed and believe that this monitoring was never implemented. Rather, while Detention Center personnel remarked on the state of Latesha's cell and her behaviors, they deliberately failed to address Latesha's hygiene, living conditions, or immediate medical needs. Indeed, just the opposite, on at least one occasion in March 2019 a Detention Center officer – disregarding Latesha's mental illness and fragile state – attacked Latesha with pepper spray, causing her severe pain and discomfort. Instead of getting Latesha the help she needed, in other words, Detention Center staff subjected her to corporal punishment for a condition that was out of her control.

22.     By the end of March 2019, Latesha was in desperate need of help. Nearly three months of incarceration (on unproven charges that were later dismissed) had sent her already compromised mental health into a downward spiral. She was suffering and the Detention Center staff knew it. They also knew she was at grave risk of self-harm.

23.     Nevertheless, on April 10, 2019, Latesha was left unsupervised and unmonitored in her cell for a lengthy period. During the time she was left unmonitored, Latesha used her clothing to build a rope and attempted to hang herself from the bunk in her cell. When the Detention Center staff finally did check on Latesha, they found her unconscious, not breathing, and blue in the face. It is not known how long after Latesha attempted suicide she was found, or how long after she was found medical assistance was called. She was ultimately transported to the local hospital emergency room.

24. Though Latesha survived her suicide attempt, she suffered severe brain damage and has never regained consciousness. Latesha has required and continues to require 24-hour medical supervision and care. She currently resides in a rehabilitation facility in Los Angeles, County, separated from her parents and other family who live across the country.

25. In short, Defendants purposefully turned a blind eye as Latesha's mental state deteriorated, her behavior became even more distressed, and finally, the inevitable occurred when Latesha attempted to take her own life.

## FIRST CAUSE OF ACTION

### (Negligence)

### [Against All Defendants]

26. Vinson and Dora reallege and incorporate by this reference Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. As a prisoner with known and observed mental health issues, Defendants owed Latesha a duty of care to keep her safe and protect her, as well as a duty to summon and provide appropriate medical care.

28. Defendants' actions and omissions, either directly in their capacity as public employees whose true names are not known and are therefore referred to as Does 1-10 or through its employees operating the West Valley Detention Center, including but not limited to deliberate indifference to Latesha's medical needs, failure to summon medical care when the employees knew or had reason to know of the need for immediate medical care, failure to properly monitor Latesha or conduct necessary wellness checks, and failure to keep Latesha in safe or sanitary condition, were inconsistent with how reasonable entities and their employees in Defendants' position would have acted under the circumstances.

29. Defendants breached their duty to Latesha. This breach was a substantial cause of Latesha's harm.

30. As a direct and proximate result of Defendants' negligence, Latesha has been harmed in an amount to be proven at trial.

(Battery)

[Against the County, the Sheriff's Department, and Does 11-15]

31. Vinson and Dora reallege and incorporate by this reference Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

32. Vinson and Dora are informed and believe that on at least one occasion, on or around March 2019, Defendants, either directly in their capacity as public employees whose true names are not known and are therefore referred to as Does 11-15, or through its employees operating the West Valley Detention Center, pepper sprayed Latesha with intent to harm or offend her. Vinson and Dora are informed and believe that Defendants acted with malice and either failed to properly warn Latesha prior to using force or used an excessive amount of pepper spray on Latesha's body.

33. Vinson and Dora are informed and believe that Latesha did not consent to the touching and a reasonable person would have been offended by the touching.

34. As a direct and proximate result of Defendants' negligence, Latesha has been harmed in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

(Deprivation of Civil Rights under Section 1983)

[Against the County, the Sheriff's Department; Does 1-20, in their individual capacities; and Does 16-20]

35. Vinson and Dora reallege and incorporate by this reference Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

36. Vinson and Dora believe and therefore allege that at all relevant times, Defendants, under the color of state law, either directly (Does 1-15) or by and through its employees, violated the constitutional rights of Latesha Smith, a citizen of the United States, including her right to equal protection of the laws under the Fifth and Fourteenth Amendment of the United States Constitution and her right to be free from cruel and unusual punishment under the Eighth Amendment. Latesha's constitutional rights were clearly established.

6
COMPLAINT

37. Defendants were on notice and aware of Latesha's severe medical needs, failing mental health, the need to keep her closely monitored, and the unsafe and unsanitary state of her living conditions. Defendants knew there was a substantial risk that Latesha would be injured or worse. Defendants were deliberately indifferent to Latesha's serious needs and deprived her of medical care and safe, humane conditions of confinement in violation of the Eight Amendment. Furthermore, Vinson and Dora believe and therefore allege that on at least one occasion, defendants Does 11-15 maliciously used excessive force on Latesha by pepper spraying her either without sufficient warning or using excessive chemical agents.

38. Vinson and Dora are informed and believe that the County and the Sheriff Department's employees acted consistent with the County and the Sheriff Department's long-standing practices, customs, or policies, which contributed to the Constitutional violations or officials with final policy-making authority (Does 16-20) ratified Defendants employees' unconstitutional actions.

39. Defendants' violations were a substantial cause of Latesha's harm.

40. As a direct and proximate result of Defendants' actions, Latesha has been harmed in an amount to be proven at trial.

## **PRAYER**

THEREFORE, Vinson and Dora pray for judgment as follows:

1. Compensatory damages in the amount to be proven at trial;

2. Punitive damages;

3. Pre-judgment interest;

4. Costs of suit; and

5. For such other and further relief as the Court may deem just and proper.

Dated: February 19, 2021                                    BIENERT KATZMAN LITTRELL WILLIAMS LLP

By: _____
Michael R. Williams
Nancy J. Sandoval
Attorneys for Plaintiffs
Dora Higgins and Vinson Higgins as court-appointed Conservators for Latesha Denise Smith