Shannon L. Gustafson, (SBN 228856)
sgustafson@lynberg.com
Anita K. Clarke, (SBN 321015)
aclarke@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants,
COUNTY OF SAN BERNARDINO
And SAN BERNARDINO COUNTY
SHERIFF'S DEPARTMENT
(erroneously sued as two separate
entities)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA HIGGINS, an individual, and VINSON HIGGINS, an individual, as court-appointed Conservators for LATESHA DENISE SMITH, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SAN BERNARDINO, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, and DOES 1 through 20, inclusive, individually and in their official capacities, <br><br> Defendants. | CASE NO. 5:21-cv-00807-JGB-SHK <br><br> *Assigned for All Purposes to:* <br> *Hon. Jesus G. Bernal – Courtroom 1* <br><br> *Assigned for Discovery Matters to:* <br> *Hon. Shashi H. Kewalramani* <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> *[Filed Concurrently Defendants' Separate Statement of Undisputed Material Facts; Exhibits; Request for Judicial Notice; Proposed Judgment]* <br><br> Date:        January 30, 2023 <br> Time:        9:00 a.m. <br> Dept.:        1 <br><br> *Trial Date:  March 21, 2023* <br><br> *Complaint filed: February 19, 2021* |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 30, 2023, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 1 of the above-entitled Court located at 3470 Twelfth Street, Riverside, California, Defendants County of San Bernardino and San Bernardino County Sheriff's Department, erroneously sued as two separate entities ("Defendants") will, and hereby do, move the Court pursuant to <u>Fed. R. Civ. Proc.</u> Rule 56, for an order granting summary judgment, or in the alternative summary adjudication as to each cause of action, in Defendants' favor, and against Plaintiffs DORA HIGGINS and VINSON HIGGINS ("Plaintiffs") on Plaintiffs5' First Amended Complaint ("FAC").

The grounds for issuing an order granting summary judgment/adjudication as to each cause of action in favor of Defendants are as follows:

1.     Plaintiffs' claim against Defendant San Bernardino Sheriff's Department is duplicative and must be dismissed; and

2.     Plaintiffs' Second Claim for Relief for "Deprivation of Civil Rights under Section 1983" is without merit and fails as a matter of law[1].

Defendants' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Sergeant Sean Struebing, RN Heather Landeros, Deputy Christopher Kelley, Deputy Jenna Lampman, Deputy Taack, and Anita K. Clarke, and the Exhibits submitted therewith; the concurrently-filed Separate Statement of Uncontroverted Material Facts and Conclusions of Law; the complete files and records of this action; and upon such other and further matters as may properly come before the Court.

---

[1] Pursuant to Stipulation, Plaintiffs have dismissed their First Claim for "Negligence" and a portion of their Second Claim for Relief under 42 U.S.C. § 1983 wherein they previously asserted a claim of excessive force arising out of a use of force incident on March 4, 2019.  <u>See</u>, Docket #35.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1        Pursuant to <u>Local Rule</u> 7-3, this Motion is filed following meet and confer

2   efforts that commenced on December 22, 2022 and continued through December 29,

3   2022.  While the parties were able to resolve some issues pursuant to this process as

4   reflected in the Stipulation of Dismissal filed as Docket #35, the issues set forth in

5   this Motion could not be resolved and the defense consequently prays that this Court

6   hear and decide the issues raised herein.

7   DATED:  December 30, 2022                          Respectfully submitted,

8                                   **LYNBERG & WATKINS**

9

10                     By: */s/ Shannon L. Gustafson*

11                         **SHANNON L. GUSTAFSON**
                           **ANITA K. CLARKE**

12                         Attorneys for Defendants,
                           COUNTY OF SAN BERNARDINO and

13                         SAN BERNARDINO COUNTY
                           SHERIFF'S DEPARTMENT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................9

II.     STATEMENT OF FACTS ...................................................................9

    A.   Prior Mental Health History ...................................................9

    B.   Housing Assignment and Mental Health Care Provided to
         Ms. Smith ..................................................................................10

    C.   April 10, 2019 Suicide Attempt ..............................................13

    D.   Defendants' Policies Regarding Housing of and Providing
         Mental Health Care to Inmates with Mental Illness ...............14

        1.   Housing of Inmates with Mental Illness .....................14

        2.   Providing Mental Health Care ...................................15

        3.   Safety Checks and Monitoring ...................................15

        4.   Use of Medication .......................................................16

III.    PLAINTIFFS DO NOT HAVE ADMISSIBLE EVIDENCE TO
    SUPPORT THEIR CLAIMS ...........................................................16

IV.     SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT
    SHOULD BE DISMISSED ..............................................................17

V.      PLAINTIFFS' SECOND CLAIM UNDER 42 U.S.C. § 1983 IS
    WITHOUT MERIT .........................................................................17

    A.   No Constitutional Violation ...................................................18

    B.   No Deliberate Indifference to Imminent Suicide Risk ...................18

    C.   No Policy, Practice, or Custom ..............................................23

        1.   No Unconstitutional Policy .........................................23

        2.   No Evidence of Custom or Practice ............................25

    D.   No Moving Force ....................................................................28

VI.     CONCLUSION ................................................................................28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF
POINTS AND AUTHORITIES

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

Cases

4

Bennett v. City of Slidell,
5
    728 F.2d 762 ...................................................................................25

6

Brown v. Cty. of San Bernardino,
7
    2021 WL 99722 ...............................................................................27

8

Bryan County v. Brown,
    520 U.S. 397 (1997)..........................................................................17
9

Castro, 833 F.3d 1060........................................................................21
10

Celotex Corp. v. Catrett,
11
    477 U.S. 317 (1986)..........................................................................16
12

City of Los Angeles v. Heller,
13
    475 U.S. 796 (1986)..........................................................................18
14

City of Oklahoma City,
15
    471 U.S. 808 (1985)..........................................................................25
16

Conn v. City of Reno,
17
    591 F.3d 1081 (9th Cir. 2010) ..........................................................21
18

County of Sacramento v. Lewis,
19
    523 U.S. 833 (1999)..........................................................................23
20

Devereaux v. Abbey,
21
    63 F.3d 1070 (9th Cir. 2001) .................................................16, 24, 28
22

Estelle v. Gamble,
23
    429 U.S. 97 (1976)............................................................................18
24

Frandzen v. County of San Diego,
    101 Cal. 317 (1894)..........................................................................23
25

Galban v. City of Fontana,
26
    2021 WL 1307722 (C.D. Cal. 2021) .................................................27

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Gordon v. County of Orange,
  888 F.3d 1118 (9th Cir 2018) ........................................................................... 19, 20

Hays v. City of New York,
  2017 WL 782496 (S.D.N.Y. 2017) ........................................................................ 27

Henderson v. City & County of San Francisco,
  2006 U.S. Dist. LEXIS 87262, 28-29 (N.D. Cal. 2006) ........................................ 26

Hernandez v. County of Santa Clara,
  2020 WL 3101041 (N.D. Cal. 2020) ...................................................................... 20

Lopez v. Smith,
  203 F.3d 1122 (9th Cir. 2000) ............................................................................... 19

Monell v. Department of Social Services of City of New York,
  436 U.S. 658 (1978) .......................................................................................... 23, 25

Moore v. City of Berkley,
  2016 WL 6024530 (N.D. Cal. 2016) ...................................................................... 28

Moriarty v. Cnty. of San Diego,
  No. 17CV1154-LAB (AGS), 2019 WL 4643602 (S.D. Cal. Sept. 24, 2019) ....... 22

Newport v. Fact Concerts, Inc.,
  453 U.S. 247 (1981) ............................................................................................... 23

Orr v. Bank of America,
  285 F.3d 764 (9th Cir. 2002) ................................................................................. 28

Owen v. Independence,
  445 U.S. 622 (1980) ............................................................................................... 23

Pembaur v. Cincinnati,
  475 U.S. 469 (1986) .......................................................................................... 17, 23

Penrod v. County of San Bernardino,
  126 Cal.App.4th 185 (2005) .................................................................................. 24

Quintanilla v. City of Downey,
  84 F.3d 353 (9th Cir. 1996) ................................................................................... 18

Ramirez v. County of Los Angeles,
  397 F.Supp.2d 1208 (C.D. Cal. 2005) ................................................................... 25

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Rocha v. Kernan,
   2019 WL 294031 ...................................................................................21

Rodriguez v. Avita,
   871 F.2d 552 (5th Cir. 1989) ..............................................................26

Sanchez v. Vild,
   891 F.2d 240 (9th Cir. 1989) ..............................................................19

Simmons v. Navajo County, Ariz.,
   609 F.3d 1011 (9th Cir. 2010) ...............................................18, 21, 22

Sloman v. City of Simi Valley,
   21 F.3d 1462 (9th Cir. 1994) ........................................................25, 26

Strauss v. City of Chicago,
   760 F.2d 765 (7th Cir. 1985) ..............................................................27

Taylor, 135 S. Ct. at 2044-45 ....................................................................21

Thompson v. City of Los Angeles,
   885 F.2d 1439 (9th Cir. 1989) ......................................................24, 25

Tieman v. City of Newburgh,
   2015 WL 1379652 (S.D.N.Y. 2015) ..................................................27

Toguchi v. Chung,
   391 F.3d 1051 (9th Cir. 2004) ............................................................19

Vallas v. City of Chula Vista,
   56 Cal.App.3d 382 (1976) ..................................................................17

Van Ort v. Estate of Stanewich,
   92 F.3d 831 (9th Cir. 1992) ..........................................................18, 28

Vance v. County of Santa Clara,
   928 F.Supp. 993 (N.D. Cal. 1996) .....................................................17

Vasquez v. County of Santa Clara,
   803 Fed. Appx. 100 (9th Cir. 2020) ...................................................22

Villegas v. Gilroy Garlic Festival Ass'n,
   541 F.3d 950 (9th Cir. 2008) ..............................................................18

7

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

<u>Vivanco v. Cal. Dept. of Corr. & Rehab.</u>,
  2019 WL 2764397 ..................................................................................21

<u>Wood v. Housewright</u>,
  900 F.2d 1332 (9th Cir. 1990) ........................................................19, 23

**<u>Statutes</u>**

42 U.S.C. § 1983..................................................................................passim

Penal Code § 245(a)(1)...............................................................................10

Penal Code § 451(B)....................................................................................10

California Government Code § 25303.....................................................23, 24

**<u>Rules</u>**

<u>Fed. R. Civ. Proc.</u> 56(e) ..............................................................................28

<u>Fed. R. Civ. Proc.</u> Rule 56 .......................................................................2, 29

**<u>Regulations</u>**

California Code of Regulations Title 15, Section 1027.5 ........................15

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF
POINTS AND AUTHORITIES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Vinson and Dora Higgins are the court appointed conservators of Latesha Denise Smith who has been in a permanent vegetative state since she attempted suicide on April 10, 2019 at the West Valley Detention Center.  Plaintiffs' first claim for Negligence under state law has been dismissed by stipulation of the parties.  See, Docket #35.  Likewise, Plaintiff's second claim under 42 U.S.C. § 1983 has been dismissed in part to the extent that it was based upon allegations of excessive force during an incident on March 4, 2019 involving the use of OC spray.  See, Docket #35. As such the only remaining claim in this lawsuit is Plaintiffs' 42 U.S.C. § 1983 claim based on allegations that Defendant failed to provide Ms. Smith appropriate mental health care while she was in custody at the West Valley Detention Center. (Decl. Clarke ¶ 2, Ex. R - Plaintiffs' FAC ¶¶ 29-40).  The only named Defendants are the San Bernardino County Sheriff's Department and the County of San Bernardino. (Decl. Clarke ¶ 2, Ex. R - Plaintiffs' FAC ¶¶ 8-10).  As will be set forth in detail below, the claims against the named Defendants are barred by applicable legal principles, and there is no material factual dispute to be resolved by a jury.

## II. STATEMENT OF FACTS[2]

### A. Prior Mental Health History

On January 5, 2019, Latesha Denise Smith was arrested and booked into the

---

[2] The day before this Motion was due, Plaintiffs' counsel advised that it would be dismissing the excessive force claims and state law negligence claim as reflected in the stipulation filed with the Court.  (Docket #35).  Defendants have therefore removed all references to any evidence and accompanying Declarations and Exhibits that were being offered in support of the dismissed claims.  However, due to the last-minute decision, Defendants did not have sufficient time to relabel the exhibits or obtain newly executed Declarations.  As such, Defendants have simply omitted Exhibits I and N which are no longer relevant.  These exhibits were intentionally withdrawn and are not missing from this filing.

1  West Valley Detention Center for Arson (Penal Code § 451(B)) and Assault with a

2  Deadly Weapon (Penal Code § 245(a)(1)) where she remained until her suicide

3  attempt on April 10, 2019.  (SUF 1).  There is no evidence that Ms. Smith ever advised

4  anybody at the jail of any prior mental health treatment she received (SUF 2), that

5  anybody at the West Valley Detention Center received any information regarding Ms.

6  Smith's past mental health treatment, diagnosis or medications from any third parties

7  or that Ms. Smith had any history of suicidal behavior (SUF 3) or that any such

8  information was available.  (SUF 4).  While Dora Higgins did advise somebody at the

9  jail that Ms. Smith had prior mental health issues, she did not provide any details that

10  would assist in her care or treatment.  (SUF 5).  Likewise, Ms. Smith had no history

11  of suicidal thoughts or attempts.  (SUF 79).

12      **B.**    **Housing Assignment and Mental Health Care Provided to Ms. Smith**

13      After her arrest on January 5, 2019, Ms. Smith was taken to the Colorado River

14  Medical Center (CRMC) to be evaluated and cleared for booking.  (SUF 6).  She was

15  then taken to the High Desert Detention Center where she was medically screened by

16  a registered nurse ("RN").  (SUF 7).  That same day, Ms. Smith was transported to

17  the West Valley Detention Center where she was again evaluated by a RN who

18  classified her as Seriously Mentally Ill LockDown ("SMIL") and placed her into

19  mental health housing.  (SUF 8).  Later that same day Ms. Smith was evaluated by

20  another RN wherein the SMIL classification was confirmed.  (SUF 9).  Ms. Smith

21  was then housed in Unit 15, the sheltered housing unit designated for mentally ill

22  inmates where she remained until her attempted suicide.  (SUF 10).

23      A full mental health evaluation was conducted of Ms. Smith on January 15,

24  2019, where she denied any suicidal ideations, past suicide attempts or any prior

25  psychiatric treatment.  (SUF 11).  Ms. Smith was seen by the psychiatrist shortly

26  thereafter on January 17, 2019, wherein she was described as selectively mute, but

27  otherwise there were "no flags."  (SUF 12).  Medications were prescribed to Ms.

28

Smith, and she was informed of the risks and benefits if she refused these medications. (SUF 13). However, the psychiatrist determined that Ms. Smith had the right to refuse based on her evaluation of Ms. Smith. (SUF 14). As part of that evaluation, it was determined that Ms. Smith wanted to harm others, but there was no indication she would harm herself. (SUF 15).

On January 19, 2019, Ms. Smith was again evaluated by a mental health clinician at the request of deputies. (SUF 16). It was decided that due to her aggressive behavior she should remain SMIL, but that she would be housed alone. (SUF 17). However, once again it was determined that Ms. Smith was not a danger to herself. (SUF 18).

On January 29, 2019, Ms. Smith was again evaluated by a psychiatrist wherein her thought process was appropriate and it was further determined she was not a suicide risk. (SUF 19). A clinical therapist followed up with Ms. Smith the next day on January 30, 2019, wherein she was calm and cooperative and denied any suicidal thoughts or plans. (SUF 20). The following week the psychiatrist followed up with Ms. Smith on February 7, 2019. (SUF 21). This time Ms. Smith did not want to speak with the psychiatrist but was again assessed as not being a suicide risk. (SUF 22). On February 13, 2019, Ms. Smith was evaluated by the RN to determine if she should remain in sheltered housing. (SUF 23). Again, there was no indication during this evaluation that Ms. Smith was a danger to herself. (SUF 24).

A few days later, on February 16, 2019, a mental health therapist was called by deputies to Ms. Smith's unit because she would not return to her cell. (SUF 25). However, Ms. Smith was calm and cooperative with the therapist and there were no indications that she was a threat to herself. (SUF 26). Shortly thereafter on February 21, 2019, Ms. Smith was again evaluated by a psychiatrist and determined not to be a threat to herself. (SUF 27). On February 25, 2019, Ms. Smith was contacted by a clinical therapist. (SUF 28). While she appeared distracted and confused, the

**11**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

therapist determined there was no indication that Ms. Smith was a danger to herself. (SUF 29).

On March 4, 2019, a clinical therapist was called to assess Ms. Smith who had removed her clothing and refused to return to her cell.  (SUF 30).  While the therapist determined that Ms. Smith was uncooperative and delusional, he did not believe she was a danger to herself or that she belonged on suicide watch.  (SUF 31).

The psychiatrist followed up with Ms. Smith a few days later on March 7, 2019. (SUF 32).   While Ms. Smith was assessed as uncooperative there was nothing indicating she was a danger to herself.  (SUF 33).  Ms. Smith was seen the following week on March 14, 2019 (SUF 34) and again the following week on March 21, 2019. (SUF 35).  During these visits the psychiatrist did not observe anything to indicate that she was a danger to herself, even if she was uncooperative.  (SUF 36).

Ms. Smith was last seen by the psychiatrist on April 4, 2019, where she was observed to be laughing and mumbling incoherently.   (SUF 37).   While the psychiatrist did not view her as a danger to herself, she did start her on a new medication and explained the risk and benefits.  (SUF 38).

On April 9, 2019, the day before her suicide attempt Ms. Smith met with a clinical social worker to discuss her release plan.  (SUF 39).  She was cooperative during this meeting and agreed to a courtesy drop off at a community facility.  (SUF 40).

In short, Ms. Smith was continuously evaluated by mental health professionals from January 5, 2019 through April 10, 2019, and while she was uncooperative at times, behaved strangely, often refused treatment, and was sometimes viewed as a danger to others, there is no evidence that any custody staff or medical staff observed any behavior to indicate that she would harm herself.  (SUF 41).

///

///

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

C.      **April 10, 2019 Suicide Attempt**

On the day of Ms. Smith's attempted suicide, she was housed in Unit 15, Segment D Cell 4.  (SUF 42).  Deputy Van Leer conducted safety checks of Unit 15, Segment D at 12:14 p.m., 12:55 p.m. and 3:52 p.m. prior to Ms. Smith's suicide attempt at approximately 4:29 p.m.  (SUF 43).  Deputy Van Leer did not observe any issues with Ms. Smith during these checks or any behavior that could be viewed as Ms. Smith preparing to commit suicide.  (SUF 44).  Additionally, another deputy conducted safety checks of Unit 15, Segment D at approximately 1:53 p.m. and 2:50 p.m. prior to Ms. Smith's suicide attempt and did not note any issues.  (SUF 45).

As reflected in the housing logs, there were safety checks conducted of Ms. Smith's housing segment approximately every hour on April 10, 2019 and there were no documented issues involving Ms. Smith.  (SUF 46).  More specifically, Ms. Smith was last checked by Deputy Van Leer at 3:52 p.m., approximately forty minutes before she was found unresponsive, and no issues were observed.  (SUF 47).

At approximately 4:28 p.m. Deputy Taack was in Unit 15's Sally port when Sergeant Clough called over to him to advise that something was wrong in Segment D because the inmates called for help.  (SUF 48).  Deputy Taack ran to Segment D and asked the inmates what happened, then saw Ms. Smith hanging from her upper bunk.  (SUF 49).  He immediately called for medical assistance and other deputies. (SUF 50).

In response, Deputy Van Leer ran towards the cell and assisted with cutting the noose Ms. Smith made of knotted clothing away from her neck.  (SUF 51).  Within one minute of Deputy Taack's arrival, jail nursing staff nurses responded and began to perform CPR and provide other life saving measures to Ms. Smith.  (SUF 52). Within eighteen minutes, paramedic staff and the Fire Department arrived and took over medical treatment of Ms. Smith.  (SUF 53).  Ms. Smith was then transported to Kaiser Hospital by paramedics.  (SUF 54).  Despite the prompt action of deputies, jail

1  medical staff, and outside medical personnel, Ms. Smith has remained unresponsive

2  in a vegetative state ever since.  (Decl. Clarke ¶ 2, Ex. R - Plaintiffs' FAC ¶¶ 1, 25).

3      **D.**   **Defendants' Policies Regarding Housing of and Providing Mental**

4         **Health Care to Inmates with Mental Illness**

5        Plaintiffs claim that Defendants have an unconstitutional policy, practice or

6  custom that caused a violation of Ms. Smith's constitutional rights.  (Decl. Clarke ¶

7  2, Ex. R - Plaintiffs' FAC see generally Second Claim).

8        **1.**     **Housing of Inmates with Mental Illness**

9        During the period of Latesha Smith's incarceration at West Valley Detention

10  Center from January 5, 2019 to April 10, 2019, it was the policy of the San Bernardino

11  County Sheriff's Department to classify inmates for security purposes, taking into

12  account their mental health needs.  (SUF 55).  It was further the policy of the San

13  Bernardino County Sheriff's Department at the time of Ms. Smith's incarceration to

14  defer to the sound judgment of qualified mental health professionals when housing

15  inmates with mental illness, such as Ms. Smith.  (SUF 56).  Specifically, only mental

16  health professionals were able to make the determination based on their professional

17  judgment to designate an inmate as Seriously Mentally Ill (SMI) or Seriously

18  Mentally Ill Lockdown (SMIL) per San Bernardino County Sheriff's Department

19  Policy 9.800.  (SUF 57).  The County of San Bernardino contracts with Liberty Health

20  Care to provide qualified mental health professionals to assess and care for inmates.

21  (SUF 76).

22        During the period of Ms. Smith's incarceration, the West Valley Detention

23  Center had a sheltered housing unit where those suffering from serious mental illness

24  could be housed.  (SUF 59).  Again, pursuant to policy only qualified medical

25  professionals could designate an inmate to be housed in Unit 15.  (SUF 60).  Per this

26  policy, all patients housed in Unit 15, must be seen by a health care professional prior

27  to placement.  (SUF 61).  The County's policy additionally required that after

28

14

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,**
**OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF**
**POINTS AND AUTHORITIES**

1  placement in Unit 15, the unit nurse shall schedule the patient for any needed follow-
2  up care and have an appropriate treatment plan developed in collaboration with
3  medical staff.  (SUF 62).

4             **2.**       **Providing Mental Health Care**

5         It was further the policy of the San Bernardino County Sheriff's Department to
6  provide inmates access to medical and mental health care beginning with their initial
7  health screening and continuing through their time in custody, including summoning
8  immediate medical care for emergencies.  (SUF 63).  Policy 311.2, that was in effect
9  when Ms. Smith was a pre-trial detainee at West Valley Detention Center, required
10  that when booked at West Valley Detention Center all patients will receive a mental
11  health screening by a qualified health professional or trained non-licensed staff at the
12  facility.  (SUF 64).  Patients who screen positive for mental health issues are referred
13  for further evaluation by a qualified mental health professional and follow ups are
14  then prescribed as needed by qualified mental health professionals based upon their
15  sound medical judgment.  (SUF 65).

16         Defendants' policies further dictated that only mental health professionals can
17  determine where inmates suffering from mental illness will be housed.  (SUF 66).
18  Specifically, the appropriate mental health classification (SUF 67), assignment to
19  specialized housing units or cells (SUF 68) and/or whether an inmate will be
20  transferred out of the facility are all determined by qualified mental health
21  professionals.  (SUF 69).

22         There was also a policy in place at the time of Ms. Smith's incarceration to
23  assess inmates for suicide risk and to respond to such risk.  (SUF 70).

24             **3.**       **Safety Checks and Monitoring**

25         It is the policy of the San Bernardino County Sheriff's Department to conduct
26  hourly safety checks of all units as required by Title 15.  (SUF 71; California Code of
27  Regulations Title 15, Section 1027.5).  However, it is the policy of the San Bernardino

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF
POINTS AND AUTHORITIES**

County Sheriff's Department to conduct more frequent checks if determined necessary by a mental health professional.  Specifically, it was the policy of the San Bernardino County Sheriff's Department at the time of Ms. Smith's incarceration, that an inmate may be placed in a suicide cell and subject to two checks every thirty minutes, if ordered by a mental health professional.  (SUF 72).  Likewise, it is the policy of the San Bernardino County Sheriff's Department that an inmate could be placed in a safety cell upon the request of a mental health professional so that two checks are conducted every thirty minutes.  (SUF 73).  In other words, inmates could be assigned particular cells that would mandate additional safety checks when deemed appropriate by the mental health professionals.  (SUF 74).  Further, Deputies are trained to refer any inmates who need such care to the appropriate medical and/or mental health care staff or to summon immediate medical care to the housing unit for those inmates experiencing a medical or mental health emergency.  (SUF 75).

### 4.    Use of Medication

The San Bernardino County Sheriff's Department has policies in place that follow California law as to when and how an inmate may be given involuntary psychotropic medications.  (SUF 76).

## III.   PLAINTIFFS DO NOT HAVE ADMISSIBLE EVIDENCE TO SUPPORT THEIR CLAIMS

Under <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the burden on the moving party may be discharged by pointing out that there is an ***absence of evidence*** to support the non-moving party's case.  Once the moving party shows the absence of evidence, the burden shifts to the non-moving party to designate ***specific facts*** showing there is a genuine issue for trial.  As summarized by the Ninth Circuit, "the <u>Celotex</u> 'showing' can be made by pointing out through argument – the absence of evidence to support plaintiff's claim."  <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); <u>see</u>, <u>Celotex Corp.</u>, 477 U.S. at 323.  (There is "no express

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponents claim".)   As will be detailed in further below, Plaintiffs have no admissible evidence to support that the County of San Bernardino and/or its Sheriff's Department maintained policies, practices or customs that caused Ms. Smith to commit suicide.  (SUF 77).

## IV.   SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT SHOULD BE DISMISSED

As an initial matter, Plaintiffs have asserted the same claims against the County of San Bernardino and the San Bernardino County Sheriff's Department based upon identical allegations.  However, the San Bernardino County Sheriff's Department is merely a department within the County of San Bernardino and as such should be dismissed as duplicative of the County.  Vallas v. City of Chula Vista, 56 Cal.App.3d 382, 387,388 (1976) ("We must conclude the police department is merely an integral part of the public entity and not an entity itself."); Vance v. County of Santa Clara, 928 F.Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality. . ..  The County is a proper defendant in a § 1983 claim, an agency of the County is not.").

## V.   PLAINTIFFS' SECOND CLAIM UNDER 42 U.S.C. § 1983 IS WITHOUT MERIT

It is well settled that municipal Defendants may not be liable under 42 U.S.C. § 1983 based on a theory of respondeat superior.  Bryan County v. Brown, 520 U.S. 397, 403 (1997) (In order to seek recovery against an individual defendant's municipal employer, however, the United States Supreme Court requires a substantial additional showing beyond the fact that "it employ[ed] a tortfeasor."); see also, Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) ("[W]hile Congress never questioned its power to impose civil liability on municipalities for their own illegal

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

acts, Congress did doubt its constitutional power to impose civil liability in order to oblige municipalities to control the ***conduct of others***.") (Emphasis added.)

As such, a Plaintiff wishing to assert such a claim must prove "'(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1992).

### A.    No Constitutional Violation

As a threshold matter, Plaintiffs' Monell claim fails as a matter of law because Plaintiffs cannot establish an underlying constitutional violation. Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996) (public entity not liable for Section 1983 damages when the factfinder concludes that an individual officer inflicted no constitutional harm to the plaintiff) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Where "…there is no constitutional violation, there can be no municipal liability." Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008).

In this regard, Plaintiffs' FAC asserts liability pursuant to 42 U.S.C. § 1983 for failure to provide adequate mental health care thereby causing Ms. Smith's suicide. The undisputed material facts establish that no constitutional violation occurred.

### B.    No Deliberate Indifference to Imminent Suicide Risk

Defendants can only be liable for failure to provide adequate mental health care if Plaintiffs can establish through admissible evidence that Defendants were deliberately indifferent to serious medical needs of the prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Courts have determined that a "***heightened suicide risk*** can present a serious medical need." See, Simmons v. Navajo County, Ariz. , 609 F.3d 1011, 1018 (9th Cir. 2010)(emphasis added).

1    "The elements of a pretrial detainee's medical care claim against an individual
2    defendant under the due process clause of the Fourteenth Amendment are: (i) the
3    defendant made an intentional decision with respect to the conditions under which the
4    plaintiff was confined; (ii) those conditions put the plaintiff at ***substantial risk*** of
5    suffering serious harm; (iii) the defendant did not take reasonable available measures
6    to abate that risk, even though a ***reasonable official in the circumstances would have***
7    ***appreciated the high degree of risk*** involved—making the consequences of the
8    defendant's conduct obvious; and (iv) by not taking such measures, the defendant
9    caused the plaintiff's injuries." See, Gordon v. County of Orange, 888 F.3d 1118,
10   1125 (9th Cir 2018) (emphasis added).

11   However, "the mere lack of due care by a state official does not deprive an
12   individual of life, liberty, or property under the Fourteenth Amendment." Id. "Thus,
13   the plaintiff must prove more than negligence" to reach a jury in Constitutional –
14   based medical cases like this one." Id. "Prison officials are deliberately indifferent
15   to a prisoner's serious medical needs when they "deny, delay, or intentionally interfere
16   with medical treatment . . . Mere negligence in diagnosing or treating a medical
17   condition, without more, does not violate a prisoner' [constitutional rights]." Lopez
18   v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  Further, a difference of opinion
19   between an inmate and prison medical personnel, or between medical professionals,
20   regarding appropriate medical diagnosis and treatment is also not enough to establish
21   a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.
22   1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Moreover, even
23   medical    malpractice    or    "gross    negligence"    does    not    by    itself
24   establish deliberate indifference to serious medical needs.  Wood v. Housewright,
25   900 F.2d 1332, 1334 (9th Cir. 1990).

26   Applied here, to prove a constitutional violation, Plaintiffs must establish that
27   the unidentified Doe Defendants made decisions with "reckless disregard" of the
28

**19**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,**
**OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF**
**POINTS AND AUTHORITIES**

imminent risk that Ms. Smith would attempt suicide.  <u>Hernandez v. County of Santa Clara</u>, 2020 WL 3101041 *4 (N.D. Cal. 2020).  Stated otherwise, Plaintiffs must have admissible evidence that a reasonable official "would have appreciated" the "high degree" of suicide risk that Ms. Smith presented at the time they made their decisions with respect to her.  <u>See</u>, <u>Gordon</u>, 888 F. 3d. at 1125.

As set forth in Defendants' Statement of Facts and supporting evidence, there was nothing in Ms. Smith's behavior from the time that she was placed in custody until the time that she attempted suicide to indicate to a reasonable official that she was at a high degree of risk of suicide.  While Ms. Smith's behavior was initially assaultive and she appeared intent on harming others and she often behaved bizarrely and/or refused to cooperate with treatment, none of these observations are consistent with somebody that was at a high risk of harming themselves.  Specifically, Ms. Smith had no known history of suicidal thoughts or attempts.  (SUF 3, 78).  Ms. Smith's medical records confirm that she received regular mental health treatment within hours of her booking up until her attempted suicide.  (SUF 11, 38).  At no time during any of this treatment, was any mental health professional provided with any information (SUF 2-4) nor did they observe any conduct which would place anybody on notice that Ms. Smith was a danger to herself.  (SUF 41).  In fact, the day prior to her suicide, Ms. Smith met with a social worker wherein she was cooperative, agreed to be dropped off at a community facility upon her release, never once giving any indication that she would take her life a mere twenty-four hours later.  (SUF 39-40).  Further, during the safety checks that took place on the day of her suicide attempt, nothing was amiss.  (SUF 43-46).

The fact that Ms. Smith behaved oddly or suffered from a serious mental illness does not automatically equate with an individual that is at a high risk of suicide who needs to be placed on suicide watch where their clothing will be removed, they will be stripped of all of their personal effects and provided only a suicide gown, suicide

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  mattress and the occasional paper utensil to eat with, all while being looked at almost

2  constantly.  (See, Exhibit M- Policy 11.500-523- Suicide Cell).  The denial of all of

3  these rights is simply not appropriate for somebody that has not displayed significant

4  suicide risks nor does the law call for it.

5       As recently explained by a Court in this Circuit:

6            Plaintiffs attempt to bundle all mental problems together, and to

7            treat deliberate indifference to some other problem with

8            deliberate indifference to a risk of suicide.  That approach is

9            erroneous.  The fact that a person is homicidal or psychotic, or

10            is suffering from mental problems more generally does not

11            mean that officials are constitutionally required to anticipate

12            and guard against suicide.  See Taylor, 135 S. Ct. at 2044–45

13            (holding prison officials not liable for failing to discover and

14            address the "particular vulnerability to suicide" of an inmate

15            with a long history of mental and substance abuse problems).

16            And it is the heightened risk of suicide—not [decedent's]

17            general mental condition—that is at issue here.  See Vivanco v.

18            Cal. Dept. of Corr. & Rehab., 2019 WL 2764397, slip op. at *6

19            (E.D. Cal., July 2, 2019) (citing Conn v. City of Reno, 591 F.3d

20            1081, 1095 (9th Cir. 2010), *vacated* 563 U.S. 915

21            (2011), *opinion reinstated in relevant part*, 568 F.3d 897 (9th

22            Cir. 2011)) (distinguishing between a "generalized risk" of

23            suicide and "the heightened risk required to establish deliberate

24            indifference").  See also Rocha v. Kernan, 2019 WL 294031,

25            slip op. at *6 (C.D. Cal., March 12, 2019,)(citing Simmons v.

26            Navajo Cty., Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010),

27            *overruled on other grounds by Castro*, 833 F.3d 1060).

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF
POINTS AND AUTHORITIES**

Moriarty v. Cnty. of San Diego, No. 17CV1154-LAB (AGS), 2019 WL 4643602, at *7 (S.D. Cal. Sept. 24, 2019).

The Court went on to conclude that while Plaintiffs argued Defendants "either knew or objectively should have known that [decedent] was experiencing serious mental health problems, the real question is whether [defendant] knew – whether any reasonable officer in his position would have known – that [decedent] was suicidal". Id. So too is the question here- and there is just nothing in the record to indicate that anybody was on notice that Ms. Smith was suicidal.

"Once a suicide has been accomplished, in spite of preventative measures, it is all too easy to point out the flaws of failure." Simmons, supra, 609 F.3d at 1020 (9th Cir. 2010). As such, Defendants anticipate Plaintiffs will argue that Defendants were deliberately indifferent to Ms. Smith's medical needs by not monitoring her more frequently than every hour. However, this very claim was rejected by the 9th Circuit in Simmons, because before more checks are required, there must be some evidence that the inmate was suicidal which is not present here. Simmons, supra, 609 F.3d at 1020 ("although a jury might reasonably conclude that [defendant] acted imprudently, wrongly or negligently by failing to check on [decedent more often and failing to conduct a thorough cell search, the question before us 'is not whether he did all that he could have, but whether he did all that the Constitution requires.").

There is simply no evidence to support that monitoring beyond the required hourly checks under Title 15 was required here merely because Ms. Smith had serious mental health issues, which were not indicative of suicide.

While Plaintiffs clearly take issue with the quality of care provided by Liberty Healthcare's staff, none of these medical decisions equate to a deliberate indifference to a risk that Ms. Smith would commit suicide. See, Vasquez v. County of Santa Clara, 803 Fed. Appx. 100, 102 (9th Cir. 2020) (affirming summary judgment, where last professional to evaluate decedent determined that "in his professional opinion"

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  decedent was not suicidal," because the decision showed negligence at best.");

2  County of Sacramento v. Lewis, 523 U.S. 833, 849 (1999) (it is well-settled "liability

3  for negligently inflicted harm is categorically beneath the threshold of constitutional

4  due process."); and Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990) (even

5  gross negligence insufficient to state claim for denial of medical needs to prisoner).

6  ### C.    No Policy, Practice, or Custom

7  Even if Plaintiffs could make the threshold showing of a constitutional

8  violation, they cannot make the additional showing of an unconstitutional policy or

9  custom that was the ***moving force*** behind the alleged violation.  To maintain a §1983

10  claim against a government entity, Plaintiffs must establish the existence of a

11  wrongful policy or custom by either: (i) identifying a ***specific*** unconstitutional

12  government policy pronouncement, or (ii) identifying a ***pattern*** of unconstitutional

13  acts by government officials which are "***so permanent and well settled*** as to constitute

14  an [unspoken] 'custom or usage' with the force of law." Monell v. Department of

15  Social Services of City of New York, 436 U.S. 658, 690-91 (1978).

16  ### 1.    No Unconstitutional Policy

17  In order to establish the "policy" element of Section 1983, Plaintiff is required

18  to prove that the conduct of which she complains was ordered by the highest level of

19  local government.  See, Pembaur, 475 U.S. at 479; Newport v. Fact Concerts, Inc.,

20  453 U.S. 247 (1981); Owen v. Independence, 445 U.S. 622 (1980).  Here, the highest

21  level of San Bernardino County government is its Board of Supervisors.  See,

22  Frandzen v. County of San Diego, 101 Cal. 317, 319-20 (1894) (The "board of

23  supervisors are the chief legislative and executive authority of the County.");

24  California Government Code § 25303 ("The board of supervisors shall supervise the

25  official conduct of all county officers, and officers of all districts and other

26  subdivisions of the county. . ..").

27  Plaintiffs prudently do not claim that the County of San Bernardino supervisors

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF
POINTS AND AUTHORITIES**

1  voted to violate Ms. Smith's constitutional rights or to enact a "policy" calling for the

2  mistreatment of inmates.  See, Penrod v. County of San Bernardino, 126 Cal.App.4th

3  185, 192-93 (2005) ("[U]nder Cal. Gov. Code § 25303, the Board [of Supervisors] is

4  legally authorized and obliged to supervise the sheriff. . ..").  Further, the undisputed

5  material facts establish the Sheriff's Department has enacted multiple policies to

6  address mental health care of inmates at West Valley Detention Center, that include

7  how such inmates are to be housed (SUF 55-57, 60-61), when they are to be monitored

8  (SUF 71-72), how they are to be medicated (SUF 76), and how to assess for suicide

9  risk (SUF 70).  Plaintiffs have no evidence to support that any of these policies, which

10 regularly involve deference to the sound discretion of a mental health professional

11 and are based upon California law and the standards set forth in Title 15-Minimum

12 Standards for Local Detention Facilities and by NCCHC: Standards for Mental Health

13 Services in Correctional Facilities, are unconstitutional on their face.  See, Devereaux

14 v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the

15 burden of proof at trial, the moving party need only point out 'that there is an absence

16 of evidence to support the nonmoving party's case.'").

17      Thus, to the extent that Plaintiffs' Section 1983 claim is premised on an alleged

18 unconstitutional "policy" decision, Plaintiffs' assertions fail ***as a matter of law***.[3]  See,

19 Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989) (dismissal

20 ordered where the plaintiff "makes no reference to a decision or policy enactment by

21 any . . . official who could conceivably be regarded as an official policymaker for [the

22 public entity defendant]").

23 ///

---

25  [3] It is anticipated that Plaintiffs will argue Defendants' policies are deficient in
26  several respects based on the report submitted by their expert Dr. Berger.  However,
    Dr. Berger candidly admitted that he did not have time to review all of the jail's
27  policies.  (Decl. Clarke ¶ 6, Ex. V - Berger Deposition Transcript 98:12-16).  Any of
28  Dr. Berger's opinions lack foundation and are speculative at best.

24

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF
POINTS AND AUTHORITIES**

## 2.    No Evidence of Custom or Practice

As such, Plaintiffs will more likely claim that the policies are regularly violated and/or misapplied in a manner as to cause constitutional violations.  However, courts have proven to be particularly sensitive to claims that a government entity maintains an unspoken "custom" of violating its citizens' constitutional rights.   In City of Oklahoma City, 471 U.S. 808, 823-24 (1985), the Supreme Court emphasized that a Section 1983 plaintiff cannot recover under a "custom" theory by simply producing evidence of the single, isolated incident of which the Plaintiff complains.  Rather, a civil rights plaintiff must prove a pattern of "persistent and widespread" unconstitutional conduct by its employees which is so "permanent and well settled as to constitute a custom."  Monell, supra, 436 U. S. at 690; see, Sloman v. City of Simi Valley, 21 F.3d 1462, 1470 (9th Cir. 1994) ("Customary practices ... are a sufficient basis for municipal liability" only where they are "widespread among police employees."); Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989) ("[P]roof of random acts or isolated events are insufficient to establish custom."); Bennett v. City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir. 1984), cert. denied  472 U.S. 1016 (1985) ("Isolated [wrongful acts] are not the persistent, often repeated, constant violations that constitute [a] custom...").

In light of this authority, courts have repeatedly required Section 1983 plaintiffs to support their "custom" allegations with ***multiple, similar past*** incidents—thereby demonstrating official knowledge and tacit approval of an unconstitutional course of conduct by municipal employees.  See, Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989) (Dismissing Monell "custom" allegation where plaintiff fails to produce evidence of "widespread abuses or practices. . . [which] are so pervasive as to have the force of law").  If anything, even more incidents are required to establish a Monell "custom" where, as here, the defendant municipality is large and heavily populated.  See e.g., Ramirez v. County of Los Angeles, 397 F.Supp.2d 1208,

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1228 (C.D. Cal. 2005) ("[T]he contention that in 13 cases, out of the tens of thousands handled by the Sheriff's Department, a defendant was found factually innocent does not prove that there was any civil rights violation in those cases, let alone prove the content of the unlawful custom, policy or practice."); <u>Henderson v. City & County of San Francisco</u>, 2006 U.S. Dist. LEXIS 87262, 28-29 (N.D. Cal. 2006) ("On plaintiffs' account, then, fewer than one-quarter of one percent of county jail inmates complain of any kind of force in a year. . .. The court agrees with defendants that instead of creating an issue of fact on the existence of a pervasive custom of excessive force, plaintiffs' proffered evidence forecloses it.").

Against this backdrop, to the extent that Plaintiffs have attempted to prove a tacit, wrongful "custom," their Section 1983 claim is hopelessly defective.  Plaintiffs have assembled no competent, admissible evidence to the contrary, and for good reason - ***<u>there is none</u>***.  At best, Plaintiffs simply proceed on the facts of this one, isolated incident of which they complain, basically alleging that because they disagree with the medical decisions made with respect to Ms. Smith there must be a custom or practice.  However, it is never sufficient to rely only on the alleged constitutional violation of one individual to support a practice and custom claim.[4]  <u>See</u>, <u>Sloman v. City of Simi Valley</u>, 21 F.3d 1462, 1470 (9th Cir. 1994) ("Individual action like [the defendant officer's] does not rise to the level of the 'well-settled', 'widespread' practices contemplated in the cases discussing municipal liability"; Jury verdict against city defendant for one employee officer's "habitual" conduct overturned as error.); <u>Rodriguez v. Avita</u>, 871 F.2d 552, 555 (5th Cir. 1989) ("It is clear ... that the sole foundation for [plaintiff's] general and conclusory allegations of 'gross

---

[4] Plaintiffs' retained expert, Dr. Steven Berger, conceded that he has never worked on any other case involving the San Bernardino Sheriff's Department and has only reviewed the file of Ms. Smith and therefore does not have any evidence to support a custom or practice.  (Decl. Clarke ¶ 6, Ex. V - Berger Deposition Transcript 23:13-22; 99:20-23; 104:22-106:11; 108:01-04).

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

negligence' and 'grossly inadequate training' was the pleaded incident itself.  Under the rules of [Monell], ... there is no case – not as a matter of pleading merely, but as one of conceded fact").

Plaintiffs' FAC vaguely refers to other lawsuits and or settlement agreements (Decl. Clarke ¶ 2, Ex. R - Plaintiffs' FAC ¶ 18).  However, "[u]nproven allegations made in other lawsuits" do not establish a jury-worthy Monell claim either.  Hays v. City of New York, 2017 WL 782496, at *7 (S.D.N.Y. 2017).  Even "[a]llegations of complaints about similar conduct [are] insufficient to state a claim for a widespread custom under Monell because 'the number of complaints filed, without more, indicates nothing,' as 'people may file a complaint for many reasons, or for no reason at all.'"  Tieman v. City of Newburgh, 2015 WL 1379652, at *1 (S.D.N.Y. 2015) quoting, Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985) (internal alteration marks omitted);  Galban v. City of Fontana, 2021 WL 1307722, at *2 (C.D. Cal. 2021) ("The Court declines to construe unproven allegations in other pending cases concerning violations of unrelated civil rights as supporting an overarching City policy of indifference to the broad panoply of inhabitants' constitutional rights.") (citations omitted); see also, Brown v. Cty. of San Bernardino, 2021 WL 99722. *5 (C.D. Cal. 2021) ("Although the FAC makes some cursory references to prior shootings… it fails to explain what happened, when, who was involved, any similarities to the facts here, or the Defendants' subsequent actions.  These allegations are far from sufficient to establish a widespread practice or custom").

Defendants anticipate that despite these well-established principles barring their Monell claim, Plaintiffs will cling to the Consent Decree entered in the matter of Turner v. County of San Bernardino Case No. 5:16-cv-00355-VAP (DTBx) as "proof" that there were numerous past incidents that have continued with Ms. Smith.  However, as set forth in the Order issued by the Turner Court, there was a non-admission of liability and none of the allegations were ever proven true.  (See,

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  concurrently field Request for Judicial Notice (Docket #37)).   Further, the <u>Turner</u>

2  Court very clearly stated that its orders were not admissible as evidence in any other

3  proceeding.   (<u>See</u>, Request for Judicial Notice Docket #37- Consent Decree ¶ 40

4  "Neither the fact of this Consent Decree nor any statement of claims contained herein

5  ***shall be used in any other case***, claim, or administrative proceedings . . . "; (emphasis

6  added)).   It is a fundamental principal of law that only admissible evidence can defeat

7  summary judgment, of which the <u>Turner</u> Consent Decree does not qualify.   <u>Fed. R.</u>

8  <u>Civ. Pro.</u> 56(e); <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002).

9         By contrast, Defendants have produced evidence establishing the obvious—

10  that they have constitutional policies and no official or unofficial "custom" of

11  unconstitutional behavior.   (SUF 70-83).   Plaintiffs have no admissible evidence to

12  rebut Defendants' evidence.   <u>See</u>, <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir.

13  2001) (en banc) ("When the nonmoving party has the burden of proof at trial, the

14  moving party need only point out 'that there is an absence of evidence to support the

15  nonmoving party's case.'").

16         **D.    No Moving Force**

17         Assuming arguendo that Plaintiffs could come forth with some evidence of a

18  policy or practice, they must still produce evidence that specific policy or practice

19  was the ***moving force*** behind the constitutional violation suffered by Ms. Smith,

20  meaning the alleged policy or practice must have ***caused*** the violation, of which

21  Plaintiffs have no admissible evidence.   <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831,

22  835 (9th Cir. 1992); <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001).

23  **VI.   CONCLUSION**

24         The facts of this matter are undeniably tragic, but tragedy alone does not give

25  rise to a jury-worthy lawsuit.   <u>See</u>, <u>Moore v. City of Berkley</u>, 2016 WL 6024530, at

26  *8 (N.D. Cal. 2016) ("Every loss of life hurts, but not every loss of life violates the

27  [Constitution].  As hard as that may be to accept, it is the law.").

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,**
**OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF**
**POINTS AND AUTHORITIES**

1        For the reasons stated herein, this Court should grant summary judgment and

2    enter judgment in favor of Defendants.  Fed. R. Civ. Proc.  56.

3    DATED:  December 30, 2022        **LYNBERG & WATKINS**
         A Professional Corporation

6    By:  */s/ Shannon L. Gustafson*
         SHANNON L. GUSTAFSON
7        ANITA K. CLARKE
8        Attorneys for Defendants, COUNTY OF
         SAN BERNARDINO and SAN
9        BERNARDINO COUNTY SHERIFF'S
         DEPARTMENT

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**